UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Brenda Drake, *on behalf of herself and others similarly situated*, | ) | Case No: |
| | ) | |
| | ) | CLASS ACTION COMPLAINT |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| FirstKey Homes, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## NATURE OF THE ACTION

1. Brenda Drake ("Plaintiff") brings this class action against FirstKey Homes, LLC ("FirstKey" or "Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Federal Communications Commission ("FCC") rules promulgated thereunder, 47 C.F.R. § 64.1200.

2. FirstKey specializes in generating "leads" by placing calls to consumers looking for a rental home, and then referring those consumers for a fee to customers of FirstKey, who are typically property owners.

3. In an effort to solicit and generate new business and profits, FirstKey engaged in a calling campaign through which it made unsolicited telephone calls to Plaintiff and others.

4. In violation of the TCPA, Defendant placed calls to Plaintiff and others by using both an "artificial or prerecorded voice" and an "automatic telephone

dialing system," without Plaintiff's and others' "prior express written consent."

5.      In addition, Defendant violated the TCPA by failing to provide an automated mechanism to opt-out of receiving the prerecorded messages it placed to consumers.

6.      The TCPA was enacted to protect consumers from unauthorized and repeated calls exactly like those now at issue—autodialed telemarketing calls utilizing prerecorded messages, placed without consent.

7.      FirstKey's violations caused Plaintiff and others to experience actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited telemarketing calls.

8.      In response to FirstKey 's unlawful conduct, Plaintiff brings the instant lawsuit and seeks an injunction requiring FirstKey to cease all unsolicited telemarketing calls, as well as an award of actual and statutory damages to Plaintiff and others, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

9.      The matter in controversy exceeds $5,000,000, as each member of the proposed class of thousands is entitled to up to $1,500.00 in statutory damages for each call at issue placed in violation the TCPA.

10.      Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

11.    Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state.

12.    Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

13.    This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

14.    This Court has personal jurisdiction over FirstKey because the conduct at issue in this case occurred, among other locations, in Georgia.

15.    As well, FirstKey's principal place of business is Marietta, Georgia.

16.    Venue is proper because Defendant is based in this District and, upon information and belief, caused the calls at issue to be placed from this District.

## PARTIES

17.    Plaintiff is, and at all relevant times was, an individual citizen of the State of Indiana residing in the City of Fishers.

18.    FirstKey is a limited liability company with its principal place of business in Marietta, Georgia.

## THE TELEPHONE CONSUMER PROTECTION
## ACT OF 1991 (TCPA), 47 U.S.C. § 227

19.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

3

20.    Section 227(b)(1)(A)(iii) of the TCPA provides, in pertinent part:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

\*       \*       \*

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

21.    Thus, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of automatic telephone dialing systems ("ATDS") to make calls, or the use of artificial or prerecorded messages in connection with any call, to a wireless number in the absence of an emergency or the prior express consent of the called party.

22.    According to FCC findings, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient for call recipients.

23.    The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules*

*and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

24.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

25.     This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018), *cert. dismissed,* 139 S. Ct. 1289 (2019) (emphasis supplied).[1]

---

[1]     In the past, the FCC held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

26.    Courts have also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA. *See, e.g., Marks*, 904 F.3d at 1051 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—*language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA*.") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

27.    The FCC has also issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or prerecorded message to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 2008 WL 65485 (2008).

28.    The FCC took steps to further protect consumers from unwanted autodialed marketing calls pursuant to the TCPA.

29.    Among other things, the FCC issued a Declaratory Ruling requiring that telemarketers obtain "prior express *written* consent" for all autodialed telemarketing calls to wireless numbers. 2012 FCC Ruling, 27 F.C.C. Rcd. at 1831 (emphasis added).

30.     The FCC defined prior express written consent in 47 C.F.R. §
64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called
that clearly authorizes the seller to deliver or cause to be delivered to the person
called advertisements or telemarketing messages using an automatic telephone
dialing system or an artificial or prerecorded voice, and the telephone number to
which the signatory authorizes such advertisements or telemarketing messages to be
delivered."

31.     Moreover, should any question about consent arise, the seller will bear
the burden of demonstrating that a clear and conspicuous disclosure was provided
and that unambiguous consent was obtained. 2012 FCC Ruling, 27 F.C.C. Rcd. at
1844.

32.     Thus, under the TCPA, the burden is on the telemarketer—here,
FirstKey—to obtain, document, and prove prior express written consent.

33.     Further, courts have long held that a "called party" under the TCPA is
the recipient of the call, not the party the caller was intending to reach.[2]

34.     Finally, for all telemarketing calls utilizing prerecorded messages, such
calls must "provide an automated, interactive voice- and/or key press-activated opt-
out mechanism for the called person to make a do-not-call request, including brief

---

[2]     *See, e.g.*, *Osorio v. State Farm Bank F.S.B.*, 746 F.3d 1242, 1251 (11th Cir.
2014); *Soppet*, 679 F.3d at 638-39.

explanatory instructions on how to use such mechanism." 47 C.F.R. § 64.1200(b)(3).

35.    "When the artificial or prerecorded voice telephone message is left on an answering machine or a voice mail service, such message must also provide a toll free number that enables the called person to call back at a later time and connect directly to the automated, interactive voice- and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list." *Id.*

### FACTUAL ALLEGATIONS

36.    Plaintiff is, and at all times was, a "person" as defined by 47 U.S.C. § 153(39).

37.    Between May 2018 and March 2019, Plaintiff received autodialed telemarketing calls, some of which contained prerecorded messages, on her cellular telephone—(XXX) XXX-6386—from Defendant.

38.    When Plaintiff did not pick up the phone, FirstKey left a prerecorded message informing Plaintiff that she should return FirstKey's call.[3]

39.    The prerecorded message states:

This is a courtesy call from FirstKey Homes.  We're sprinkling a little love your way.  We're presently offering $500 off of April rent on select

---

[3]    Recording available at: https://www.dropbox.com/sh/kzalm0o5ov0ea6o/AABsqtEUyW_4fgIvSVpyDS5ta?dl=0.

homes.  What an exciting offer.  This promotion is on select homes through February 28th.  Please call us today at 844-395-3959.  We look forward to helping you select your new home.  Thank you for choosing FirstKey Homes.

40.    There was at least one number that appeared in Plaintiff's caller ID for these calls: 844-395-3959.

41.    This number is associated with FirstKey.

42.    For example, when this number is called, the call is answered by a prerecorded message that acknowledges the company being called is FirstKey.

43.    In addition, an internet search of the aforementioned number reveals it is associated with FirstKey.[4]

44.    FirstKey is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39).

45.    In receiving unwanted and unsolicited telemarketing calls on her cellular telephone, Plaintiff suffered concrete harm in the form of lost time spent fielding the unwanted calls and attempting to get FirstKey to stop the calls, loss of use of her cellular telephone as the calls came in, and an invasion of privacy and intrusion upon her seclusion.

46.    What's more, Defendant's prerecorded messages failed to provide (i) an automated, interactive voice- and/or key press-activated opt-out mechanism

---

[4]    *See* https://www.firstkeyhomes.com/contact-us/.

for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism; or (ii) a toll free number that enables the called person to call back at a later time and connect directly to the automated, interactive voice- and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list.

47.    Indeed, the prerecorded message alleged in Paragraph 39 above does not disclose any automated opt-out mechanism for the called person to make a do-not-call request.

48.    Further, upon calling the "844" number disclosed in the prerecorded voice message, the caller is not connected directly to an automated, interactive voice- and/or key press-activated opt-out mechanism that automatically records the called person's number to the seller's do-not-call list.

49.    Rather, upon calling the toll-free number, a prerecorded message plays the following:  "Thank you for calling FirstKey Homes . . . please hold the line for the next available agent".[5]

50.    On information and belief, telephone contact made by FirstKey to Plaintiff's cellular telephone number utilized a prerecorded message, as defined by 47 U.S.C. § 227(a)(1).

---

[5] Recording available at:
https://www.dropbox.com/sh/kzalm0o5ov0ea6o/AABsqtEUyW_4fgIvSVpyDS5ta?dl=0.

51.     On information and belief, telephone contact made by FirstKey to Plaintiff on her cellular telephone occurred via a predictive dialer.

52.     The indicia that Defendant used a predictive dialer include the long pause and clicking noise before FirstKey's prerecorded message started playing.

53.     Plaintiff's cellular telephone number was, at all relevant times, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

54.     Plaintiff did not provide her "prior express written consent" allowing FirstKey to place telemarketing calls to Plaintiff's cellular telephone utilizing prerecorded messages and an ATDS within the meaning of the TCPA.

55.     Indeed, Plaintiff was never a customer of FirstKey, nor had she ever had any prior dealings with FirstKey whatsoever before FirstKey began calling her.

56.     The telephone calls made to Plaintiff's cellular telephone by FirstKey were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

57.     The telephone calls to Plaintiff's cellular telephone made by FirstKey, which utilized prerecorded messages and failed to include an automated opt-out mechanism for the called party to make a do-not-call request, violated the TCPA.

58.    The telephone calls to Plaintiff's cellular telephone made by FirstKey, which utilized prerecorded messages and an ATDS for non-emergency purposes and in the absence of Plaintiff's prior express written consent, violated the TCPA.

59.    Under the TCPA, the burden is on FirstKey to demonstrate that Plaintiff provided it with prior express written consent within the meaning of the statute.

## CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this action on behalf of herself and other persons similarly situated.

61.    Plaintiff proposes the following class definitions, subject to amendment as appropriate:

**The No-Consent Class**:  All persons and entities throughout the United States (1) to whom FirstKey Homes LLC placed one or more calls, (2) for the purpose of advertising its goods or services, (3) directed to a number assigned to a cellular telephone service, (4) by using an automatic telephone dialing system or an artificial or prerecorded voice, (5) absent prior express written consent, (6) within four years preceding the date of this complaint through the date of class certification.

**No Opt-Out Class**:  All persons and entities throughout the United States (1) to whom FirstKey Homes LLC placed one or more calls, (2) for the purpose of advertising its goods or services, (3) by using an artificial or prerecorded voice telephone message, (4) which did not provide (i) an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request; and/or (ii) a toll free number that enabled the called person to call back at a later time and connect directly to an automated, interactive voice-

and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list where the artificial or prerecorded message was left on an answering machine or voice mail service, (5) within four years preceding the date of this complaint through the date of class certification.

62.    Plaintiff represents, and is a member of, the Classes.

63.    Excluded from the Classes are FirstKey and any entities in which FirstKey has a controlling interest, FirstKey's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

64.    Plaintiff does not know the exact number of members of the Classes, but on information and belief, the number of Class members is likely in the thousands.

65.    Plaintiff and all members of the Classes have been harmed by the acts of FirstKey, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their cellular phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

66.    This class action complaint seeks injunctive relief and money damages.

67.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

68.    The disposition of claims in a class action will provide substantial benefit to the parties and the judicial economy of the Court in avoiding a multiplicity of identical suits.

69.    The Classes can be identified through records maintained by FirstKey and third parties.

70.    There are well defined, nearly identical, questions of law and fact affecting all Class members.

71.    The questions of law and fact involving the Class claims predominate over questions which may affect individual Class members.

72.    Those common questions of law and fact include, but are not limited to, the following:

    a.    Whether non-emergency calls made to Plaintiff and Class members' cellular telephones used an automatic telephone dialing system or an artificial or prerecorded voice;

    b.    Whether such calls were made by FirstKey;

    c.    Whether such calls were made for telemarketing purposes;

    d.    Whether FirstKey can meet its burden of showing it obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to make such calls;

14

  e. Whether FirstKey's calls utilizing an artificial voice or prerecorded message included an opt-out mechanism;

  f. Whether FirstKey's conduct was knowing or willful;

  g. Whether FirstKey is liable for damages, and the amount of such damages; and

  h. Whether FirstKey should be enjoined from engaging in such conduct in the future.

72. As a person who received multiple telephone calls using prerecorded messages and/or an ATDS, without her prior express consent within the meaning of the TCPA and FCC Rules, and which did not include an automated opt-out mechanism, Plaintiff asserts claims that are typical of each Class member.

73. Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has no interests which are irrevocably antagonistic to any member of the Classes.

74. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

75. A class action is the superior method for the fair and efficient adjudication of this controversy.

76.     Class wide relief is essential to compel FirstKey to comply with the TCPA.

77.     The interest of Class members in individually controlling the prosecution of separate claims against FirstKey is small because the statutory damages in an individual action for the violation of the TCPA are relatively small.

78.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class cases because the calls at issue are all automated and prerecorded and the Class members did not provide prior express written consent, as required under the statute, to authorize such calls to their cellular telephones.

79.     FirstKey has acted on grounds applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

80.     Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CLAIM FOR RELIEF

### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

### (On behalf of the No-Consent Class)

81.   Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-80 as if fully stated herein.

82.   Plaintiff brings this claim on behalf of herself and the No-Consent Class.

83.   FirstKey violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an automatic telephone dialing system to place calls to Plaintiff's cellular telephone number without her express consent.

84.   FirstKey separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls to Plaintiff's cellular telephone number without her express consent.

85.   As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the No-Consent Class are entitled to damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Violation of 47 C.F.R. § 64.1200, *et seq.* and 47 U.S.C. § 227(b)(1)(A)(iii)

### (On behalf of the No-Consent Class)

86.   Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-80 as if fully set forth herein.

17

87.    Plaintiff brings this claim on behalf of herself and the No-Consent Class.

88.    FirstKey violated 47 C.F.R. § 64.1200(a)(2) by utilizing at automatic telephone dialing system and an artificial or prerecorded voice to place telemarketing calls to Plaintiff's cellular telephone number without her prior express written consent.

89.    As result of FirstKey's violations of 47 C.F.R. § 64.1200, Plaintiff and the members of the No-Consent Class are entitled to damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**Violation of 47 C.F.R. § 64.1200, *et seq.* and 47 U.S.C. § 227(b)(1)(A)(iii)**

**(On behalf of the No Opt-Out Class)**

90.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-80 as if fully set forth herein.

91.    FirstKey violated 47 C.F.R. § 64.1200(b)(3) by delivering artificial or prerecorded voice messages in connection with telemarketing calls to Plaintiff's cellular telephone number that did not provide (i) an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request; and / or (ii) a toll free number that enabled the called person to call back at a later time and connect directly to an automated, interactive voice- and/or

key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list where the artificial or prerecorded message was left on an answering machine or voice mail service.

92.    As result of FirstKey's violations of 47 C.F.R. § 64.1200, Plaintiff and the members of the No Opt-Out Class are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against FirstKey:

A.    Injunctive relief prohibiting such violations of the TCPA by FirstKey in the future;

B.    As a result of FirstKey's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages for each and every violation of the TCPA;

C.    As a result of FirstKey's violations of 47 C.F.R. § 64.1200, *et seq*, and 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages for each and every violation of the TCPA;

D.    An award of attorneys' fees and costs to counsel for Plaintiff and the Classes;

E.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes and any Subclass(es) the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes and any Subclass(es), and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes and any Subclass(es);

F.     Such other relief as the Court deems just and proper.

Dated: April 18, 2019

Respectfully submitted,

**BRENDA DRAKE**

*/s/ Shireen Hormozdi*
Shireen Hormozdi
1770 Indian Trail Lilburn Road
Suite 175
Norcross, GA 30093
Tel: 678-395-7795
Fax: 866-929-2434
shireen@norcrosslawfirm.com

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

**GREENWALD   DAVIDSON   RADBIL
PLLC**
Michael L. Greenwald
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Phone: 561.826.5477
Fax: 561.961.5684
mgreenwald@gdrlawfirm.com

Aaron D. Radbil
401 Congress Ave., Ste. 1540
Austin, TX 78701
Phone: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

*Attorneys for Plaintiff and
the Proposed Classes*