# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

BRENDA DRAKE, on behalf of herself
and others similarly situated,

*Plaintiff,*

v.

FIRSTKEY HOMES, LLC,

*Defendant.*

No. 1:19-cv-01746-LMM

## UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 5

I.   THE COURT SHOULD RESOLVE ALL NON-
     CONSTITUTIONAL ISSUES BEFORE ADDRESSING THE
     TCPA'S CONSTITUTIONALITY ............................................... 8

II.  THE COURT SHOULD AVOID ADDRESSING THE
     CONSTITUTIONALITY OF THE TCPA'S AUTODIALER
     RESTRICTION IN LIGHT OF THE SEVERABILITY OF THE
     GOVERNMENT-DEBT EXCEPTION ........................................ 9

III. THE TCPA'S AUTODIALER RESTRICTION DOES NOT
     VIOLATE THE FIRST AMENDMENT .................................... 12

     A.   None of the Exceptions Identified By Defendant Render the
          TCPA Unconstitutional ................................................ 13

          1.   *The Government-Debt Exception Does Not Render the
               TCPA's Autodialer Restriction Content-Based* ...................... 14

          2.   *Emergency Calls Exception Does Not Render the Statute
               Content Based* ........................................... 15

          3.   *The FCC's Orders Do Not Render the Statute Content
               Based* ........................................................ 17

IV.  IF THE COURT FINDS THE TCPA CONTENT BASED, IT
     SHOULD CONCLUDE THAT THE STATUTE SATISFIES
     STRICT SCRUTINY .............................................................. 18

     A.   The Autodialer Restriction Serves a Compelling
          Government Interest ........................................................ 19

     B.   The Autodialer Restriction Is Narrowly Tailored in That It
          Is Neither Over- Nor Under-Inclusive ............................ 19

CONCLUSION .................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alaska Airlines, Inc. v. Brock,*

    480 U.S. 678 (1987) ........................................................................... 10

*Am. Ass'n of Political Consultants, Inc. v. FCC,*

    923 F.3d 159 (4th Cir. 2019) ..................................................*passim*

*Brickman v. Facebook, Inc.,*

    230 F. Supp. 3d 1036 (N.D. Cal. 2017) .................................... 14, 21

*Cahaly v. Larosa,*

    796 F.3d 399 (4th Cir. 2015) .................................................. 21, 22

*Carey v. Brown,*

    447 U.S. 455 (1980) ........................................................................... 19

*Dalton v. United States,*

    816 F.2d 971 (4th Cir. 1987) ........................................................... 18

*Duguid v. Facebook, Inc.,*

    926 F.3d 1146 (9th Cir. 2019) ................................................*passim*

*FCC v. ITT World Commc'ns, Inc.,*

    466 U.S. 463 (1984) ........................................................................... 17

*Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs,*

    703 F. App'x 929 (11th Cir. 2017)

    *cert denied*, 138 S. Ct. 2623 (2018) .............................................. 13

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,

   561 U.S. 477 (2010) ....................................................................... 10

*Frisby v. Schultz*,

   487 U.S. 474 (1988) ....................................................................... 19

*Gallion v. United States*,

   772 F. App'x 604 (9th Cir. 2019)............................................... 3, 10

*Gomez v. Campbell-Ewald Co.*,

   768 F.3d 871 (9th Cir. 2014)

   *aff'd on other grounds*, 136 S. Ct. 663 (2016).......................................*passim*

*Greenley v. Laborers' Int'l Union of N. Am.*,

   271 F. Supp. 3d 1128 (D. Minn. 2017)....................................... 18, 22

*Gresham v. Swanson*,

   866 F.3d 853 (8th Cir. 2017)

   *cert denied*, 138 S. Ct. 682 (2018) ............................................... 11

*Gulf Oil Co. v. Bernard*,

   452 U.S. 89 (1981) ........................................................................... 8

*Hagans v. Lavine*,

   415 U.S. 528 (1974) ......................................................................... 2

*Holt v. Facebook, Inc.*,

   240 F. Supp. 3d 1021 (N.D. Cal. 2017) ....................................... 21

*Hutchinson v. Proxmire,*

    443 U.S. 111 (1979) ....................................................................... 8

*INS v. Chadha,*

    462 U.S. 919 (1983) ..................................................................... 10

*Joffe v. Acacia Mortg. Corp.,*

    121 P.3d 831 (Ariz. Ct. App. 2005)

    *cert. denied sub nom., Acacia Mortg. Corp. v. Joffe,*

    549 U.S 111 (2007) ........................................................................ 5

*Katz v. Liberty Power Corp., LLC,*

    No. 18-cv-10506-ADB, 2019 WL 4751936

    (D. Mass. Sept. 24, 2019)............................................................. 4

*Mais v. Gulf Coast Collection Bureau, Inc.,*

    768 F.3d 1110 (11th Cir. 2014) ................................................... 17

*Maryland v. Universal Elections, Inc.,*

    729 F.3d 370 (4th Cir. 2013) ...................................................... 12

*Mejia v. Time Warner Cable Inc.,*

    No. 15-CV-6445 (JPO), 2017 WL 3278926

    (S.D.N.Y. Aug. 1, 2017) ......................................................... 18, 21

*Mey v. Venture Data, LLC,*

    245 F. Supp. 3d 771 (N.D. W.Va. 2017)....................................... 5

*Mims v. Arrow Fin. Servs., LLC,*

   565 U.S. 368 (2012) ..................................................................... 5

*Moore v. United States,*

   138 S. Ct. 753 (2018) ................................................................... 19

*Moser v. FCC,*

   46 F.3d 970 (9th Cir. 1995) ......................................................... 12

*Patriotic Veterans, Inc. v. Zoeller,*

   845 F.3d 303 (7th Cir. 2017)

   *cert. denied sub nom, Patriotic Veterans, Inc. v. Hill,*

   137 S. Ct. 2321 (2017) ..........................................................*passim*

*Perrong v. Liberty Power Corp., LLC,*

   C.A. No. 18-712 (MN), 2019 WL 4751936 (D. Del. Sept. 30, 2019)............... 3

*Pleasant Grove City v. Summum,*

   555 U.S. 460 (2009) ................................................................... 15

*R.A.V. v. City of St. Paul, Minn.,*

   505 U.S. 377 (1992) ................................................................... 16

*Reed v. Town of Gilbert,*

   135 S. Ct. 2218 (2015) ..........................................................*passim*

*Regan v. Time, Inc.,*

   468 U.S. 641 (1984) ................................................................... 10

*Reno v. Am. Civil Lib. Union*,

    521 U.S. 844 (1997) ...................................................................... 21

*Rosenberger v. Rector and Visitors of UVA*,

    515 U.S. 819 (1995) ...................................................................... 15

*Satterfield v. Simon & Schuster, Inc.*,

    569 F.3d 946 (9th Cir. 2009) .......................................................... 7

*Schaevitz v. Braman Hyundai*,

No. 1:17-23890, ECF No. 62 (S.D. Fla. Mar. 25, 2019) .................................. 3, 9

*Sliwa v. Bright House Networks, LLC*,

    No. 2:16-cv-235, 2018 WL 1531913 (M.D. Fla. Mar. 29, 2018), ................ 3, 9

*Spector Motor Serv., Inc. v. McLaughlin*,

    323 U.S. 101 (1944) ................................................................... 3, 9

*United States v. Blake*,

    868 F.3d 960 (11th Cir. 2017)

    *cert. denied sub nom. Moore v. United States*, 138 S. Ct. 753 (2018) ......... 19

*Van Bergen v. Minnesota*,

    59 F.3d 1541 (8th Cir. 1995) ..................................................... 4, 11

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,

    135 S. Ct. 2239 (2015) ................................................................ 15

*Wijesinha v. Bluegreen Vacations Unlimited, Inc.*,

No. 1:19-civ-20073 (S.D. Fla. Apr. 3, 2019) .......................................... 3, 9

*Williams-Yulee v. Fla. Bar*,

   135 S. Ct. 1656 (2015) ................................................................. 21

*Woods v. Santander Consumer USA Inc.*,

  No. 2:14-cv-02104, 2019 WL 1178003

  (N.D. Ala. Mar. 30, 2017) ........................................................*passim*

*Wreyford v. Citizens for Transp. Mobility, Inc.*,

  957 F. Supp. 2d 1378 (N.D. Ga. 2013) ......................................... 12

*Yearsley v. W.A. Ross Const. Co.*,

  309 U.S. 18 (1940) ...................................................................... 20

### Statutes

28 U.S.C. § 2342(1) ...................................................................... 17

47 U.S.C. § 227 ............................................................................. 1

47 U.S.C. § 227(b)(1)(A) .............................................................. 15

47 U.S.C. § 227(b)(1)(A)(iii) ........................................... 6, 14, 22

47 U.S.C. § 227(b)(2)(C) ................................................... 1, 6, 17

47 U.S.C. § 402(a) ........................................................................ 17

47 U.S.C. § 608 ............................................................................ 10

### Regulations

47 C.F.R. § 64.1200(f)(4) .............................................................. 15

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

Report and Order, 18 FCC Rcd. 14014 (July 3, 2003) .................................. 6

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot.*

*Act of 1991*,

30 F.C.C. Rcd. 7961 (July 10, 2015) ............................................. 6

*In the Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling*

*Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

29 F.C.C. Rcd. 3432 (Mar. 27, 2014) ............................................. 6

### Other Authorities

Pub. L. No. 114-74, 129 Stat. 584 (2015) ........................................... 6

77 Fed. Reg. 34 ......................................................................... 6

137 Cong. Rec. 30,821-30,822 (1991) ......................................... 6, 16

137 Cong. Rec. H11,310 (daily ed. Nov. 26, 1991) ........................... 16

137 Cong. Rec. S18784 (daily ed. Nov. 27, 1991) ............................. 16

S. Rep. No. 102-178 (1991) ..................................................... 14, 15

## **INTRODUCTION**

Plaintiff Brenda Drake filed this action against Defendant FirstKey Homes, LLC ("FirstKey") on April 18, 2019. According to Plaintiff's Complaint, FirstKey is a company that "specializes in generating 'leads' by placing calls to consumers looking for a rental home, and then referring those consumers for a fee to customers of FirstKey, who are typically property owners." Compl. ¶ 2, ECF No. 1. Plaintiff alleges that FirstKey, using an automated telephone dialing system ("ATDS"), sent or caused to be sent unwanted and unsolicited telemarketing calls to Plaintiff's telephone number without her express consent, in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.* ("TCPA"). Pl.'s Compl. ¶¶ 45, 50. Section 227(b)(1)(A)(iii) of the TCPA (the "autodialer restriction") prohibits the use of an ATDS to make a call to a cell phone user without the user's prior express consent, unless the call or message is initiated for an emergency purpose or to collect a debt owed to or guaranteed by the United States (the "government-debt exception"). Separately, the TCPA also empowers the Federal Communications Commission ("FCC") to make exemptions "in the interest of the privacy rights this section is intended to protect." *See* 47 U.S.C. § 227(b)(2)(C).

Plaintiff alleges in her Complaint that Defendant called her multiple times and left at least one voicemail with a pre-recorded message offering her a discount on a rental home and asking her to return the call. Compl. ¶ 39. Plaintiff further alleges that Defendant's prerecorded messages failed to provide an opt-out mechanism or an opportunity to make a do-not-call request. *Id.* ¶ 46. Plaintiff alleges that she did not provide prior express written consent, was never a customer of Defendant's, and had never had prior dealings with Defendant. *Id.* ¶¶ 54-55.

1

Defendant filed a motion for summary judgment, or alternatively, a motion to dismiss on August 12, 2019, in which it argued in part that the TCPA violates the First Amendment both facially and as-applied to Defendant. Def.'s Mot. for Summ. J., or Alternatively, to Dismiss Proposed Class Allegations ("Def.'s Mot.") at 25-28, ECF No. 29.

Although the United States has ample grounds on which to defend the TCPA's constitutionality, the Court need never reach the merits of the constitutional challenge because there are nonconstitutional grounds for decision that must be resolved first. Defendant has moved for summary judgment or to dismiss the Complaint on a variety of grounds, including that it is not liable under the TCPA due to intervening acts, because it acted on a reasonable belief that it had consent to call Plaintiff, and that Plaintiff lacks standing to assert one of its claims. Def.'s Mot. at 10-25. Although the United States takes no position on these issues, their resolution may obviate the need to reach the constitutional questions Defendant raises. The Court "should not decide federal constitutional questions where a dispositive nonconstitutional ground is available." *Hagans v. Lavine*, 415 U.S. 528, 547 (1974).

Even if the Court declines to resolve the nonconstitutional issues at this stage, it still need not resolve Defendant's constitutional challenge because the primary basis for it—the government-debt exception—is severable from the remainder of the restriction.[1] Consistent with longstanding principles of constitutional avoidance, the Court should avoid addressing the TCPA autodialer restriction's constitutionality under the First Amendment in light

---

[1] The other two bases—the emergency call exception and the FCC's regulatory exceptions—have never been found to render the TCPA unconstitutional as they are reflection of the government's sovereign immunity and outside of the Court's jurisdiction, respectively, as discussed herein.

of the severability of the government-debt exception.  *See Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944)  ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.").  At least four courts in the Eleventh Circuit have followed this approach.  *See Woods v. Santander Consumer USA Inc.*, No. 2:14-cv-02104, 2017 WL 1178003, at *3-*4 & n.6 (N.D. Ala. Mar. 30, 2017) (avoiding the constitutional question after holding that the government debt exception is severable); *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018) (same), *interlocutory appeal denied*, 2018 WL 2296779, at *3 (M.D. Fla. May 21, 2018); *Schaevitz v. Braman Hyundai*, No. 1:17-23890, Order on Mot. to Dismiss at 17-21, ECF No. 62 (S.D. Fla. Mar. 25, 2019) (same); *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 1:19-civ-20073, Order at 9, ECF No. 29 (S.D. Fla. Apr. 3, 2019) (same) (citing *Woods*, 2017 WL 1178003 at *3 n.6).

Also, the only two appellate courts that have addressed the issue directly, the Fourth and the Ninth Circuits, have determined that the government-debt exception is severable.  *See, e.g.*, *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 171 (4th Cir. 2019) [hereinafter *AAPC*] (finding the exception severable); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156-57 (9th Cir. 2019) (same), *petition for cert. filed sub nom.*, *Facebook, Inc. v. Duguid*, No. 19-511 (Oct. 21, 2019) (filed by Facebook); *Gallion v. United States*, 772 F. App'x 604, 606 (9th Cir. 2019) (following *Duguid*), *petition for cert. filed sub nom.*, *Charter Commc'ns, Inc. v. Gallion*, No. 19-575 (Nov. 1, 2019) (filed by Charter Commc'ns); *Gallion v. United States*, 772 F. App'x 604, 606 (9th Cir. 2019) (following *Duguid*); *see also Perrong v. Liberty Power Corp., LLC*, C.A. No. 18-712 (MN), 2019 WL 4751936, at *6-7 (D. Del. Sept. 30, 2019)

("[T]he exemption can be severed."); *Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506-ADB, 2019 WL 4645524, at *8 (D. Mass. Sept. 24, 2019) ("[T]here is little doubt that the debt-collection exception is severable.").  As a result, rather than reach Defendant's First Amendment challenge, the Court should hold that the exception is severable and consequently avoid the necessity of deciding Defendant's First Amendment challenge.

If the Court instead chooses to address the lawfulness of the TCPA's autodialer restriction under the First Amendment, it should uphold the statute's constitutionality.  Although the Fourth and Ninth Circuits in *AAPC* and *Duguid/Gallion*, respectively, decided otherwise, those decisions were in error.[2]  Prior to *AAPC* and *Duguid/Gallion*, every district court to consider a First Amendment challenge to the TCPA—including after the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), and after the statute's central provision was amended in 2015—had concluded that the autodialer restriction is constitutional.  And *AAPC* and *Duguid* cannot be squared with *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303 (7th Cir. 2017), *cert. denied sub nom*, *Patriotic Veterans, Inc. v. Hill*, 137 S. Ct. 2321 (2017), in which the Seventh Circuit approvingly cited post-*Reed* decisions affirming the constitutionality of the TCPA.  *See id.* at 306 (noting that "[f]ederal law severely limits unsolicited calls to cell phones, 47 U.S.C. § 227(b)(1)(A)(iii), and . . . . ha[s] been sustained against constitutional challenge"); *id.* at 304 (citing, *e.g.*, *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd on other grounds*, 136 S. Ct. 663 (2016), and *Van Bergen v. Minnesota*, 59 F.3d 1541, 1549-56 (8th Cir. 1995)), which upheld the same or related provisions.

---

[2] The United States' petitions for rehearing in *AAPC* and *Duguid* were denied.  The United States is presently considering whether to file a petition for certiorari in one or both cases.

If this Court were to conclude, contrary to *Patriotic Veterans*, that the TCPA's autodialer restriction is subject to strict scrutiny, it should nevertheless uphold the narrow restriction under that standard. Congress made extensive findings about the Act's purpose of protecting consumer privacy, an interest the Supreme Court has already acknowledged is compelling. The autodialer restriction is narrowly tailored to protect that interest, prohibiting only the sorts of automated communications that Congress found most problematic—and only in the absence of consumer consent. Accordingly, the TCPA's autodialer restriction survives strict scrutiny.

For these reasons, Defendant's statutory challenge should be rejected.

## BACKGROUND

"Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes— prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). The ubiquity of cell phones only aggravates such problems. "People keep their cellular phones on their person at nearly all times: in pockets, purses, and attached to belts. Unlike other modes of communication, the telephone commands our instant attention." *Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831, 842 (Ariz. Ct. App. 2005), *cert. denied sub nom., Acacia Mortg. Corp. v. Joffe*, 549 U.S. 1111 (2007) (mem.); *see also Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 781 (N.D. W.Va. 2017) ("When it enacted the TCPA, Congress repeatedly emphasized the nuisance aspect of robocalls, showing that it considered the interruptions that they cause and the time they cause consumers to waste to be one of the harms it sought to remedy. . . . 'They wake us up in the morning; they interrupt our dinner at night; they

5

force the sick and elderly out of bed.'" (quoting 137 Cong. Rec. 30,821-30,822 (1991) (testimony of Sen. Hollings))).

> As pertinent here, the statute makes it unlawful
>
> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, *unless such call is made solely to collect a debt owed to or guaranteed by the United States*.

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

Congress added the final (emphasized) clause of the autodialer restriction, the government-debt exception, in November 2015 as part of the Bipartisan Budget Act of 2015. *See* Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (2015). Prior to that, Congress had also empowered the FCC to make exemptions "in the interest of the privacy rights this section is intended to protect." *See* 47 U.S.C. § 227(b)(2)(C).[3] The statute has been interpreted to apply to both phone calls and text messages. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009).

---

[3] The FCC has issued regulations exempting calls related to medical appointment reminders, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8030 (July 10, 2015), package delivery notifications, *In the Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3432, 3432 (Mar. 27, 2014), pending money transfers, 30 F.C.C. Rcd. at 8023, and certain "autodialed or prerecorded message calls by a wireless carrier to its customer," Tel. Consumer Prot. Act of 1991, 77 Fed. Reg. 34,233-01, at 34,236 (June 11, 2012). *See* Def.'s Mot. at 25 n.5.

According to the Complaint, Defendant sent or caused to be sent unwanted and unsolicited telemarketing calls to Plaintiff's cellular telephone, using an ATDS. *See* Compl. ¶¶ 45, 50. Plaintiff alleges that Defendant left at least one voicemail with a pre-recorded message offering her a discount on a rental home and asking her to return the call. *Id.* ¶ 39. Plaintiff further alleges that Defendant's prerecorded messages failed to provide an opt-out mechanism or an opportunity to make a do-not-call request. *Id.* ¶ 46. Plaintiff alleges that she did not provide prior express written consent, was never a customer of Defendant's, and had never had prior dealings with Defendant. *Id.* ¶¶ 54-55.

Plaintiff seeks to bring this action on behalf of two classes: (1) those who received one or more calls from Defendant through an ATDS or an artificial or prerecorded voice in the absence of consent; and (2) those who received such calls and were not provided a mechanism to opt out. *Id.* ¶ 61. Plaintiff alleges that her injuries include the invasion of her privacy, annoyance, waste of time, depletion of her cellular phone battery, and the loss of her ability to receive legitimate communications. Plaintiff claims that these actions violated the autodialer provision of the TCPA as well as FCC regulations requiring prerecorded messages to include a toll-free number to opt out of future calls. *Id.* ¶¶ 81-92. Plaintiff seeks both injunctive relief barring Defendant from continuing to engage in violations of the autodialer provision of the TCPA, as well as statutory damages for each proven violation. *Id.* ¶ 62.

Defendant has moved to dismiss the Complaint on a number of nonconstitutional grounds, but also argues that the TCPA is unconstitutional. Defendant contends that the autodialer restriction is an illegal, content-based restriction on speech in light of the government-debt exception, as well as the emergency call exception and the FCC's regulatory exceptions, and that the TCPA cannot satisfy strict scrutiny because these exceptions are both under-

7

and over-inclusive and not the least restrictive alternative.  *See* Def.'s Mot. at 26.  Defendant also argues that the severance of the government-debt exception would not "save the TCPA from unconstitutionality," *id*. at 27, and that the autodialer restriction cannot be constitutionally applied to Defendant in this case.  *Id*. at 26-27.[4]

On September 19, 2019, the United States filed a consent motion for extension of time.  ECF No. 34.  The Court granted the motion on the same day and ordered the government to decide whether to intervene by November 11, 2019.  ECF No. 35.

## ARGUMENT

## I.   THE COURT SHOULD RESOLVE ALL NON-CONSTITUTIONAL ISSUES BEFORE ADDRESSING THE TCPA'S CONSTITUTIONALITY

As an initial matter, this Court should not address the constitutionality of the TCPA until it resolves all other issues in Defendant's Motion to Dismiss.  "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 122 (1979) ("Our practice is to avoid reaching constitutional questions if a dispositive nonconstitutional ground is available.").

In addition to its constitutional challenge pursuant to the First Amendment, Defendant raises other arguments in favor of dismissal.  Defendant contends that it is not liable under the TCPA due to intervening acts, because it acted on a reasonable belief that it had consent to call Plaintiff, and that Plaintiff lacks standing to assert one of its claims.  Def.'s Mot. at 10-

---

[4] The United States takes no position on Defendant's as-applied challenge because it relies on disputed facts that the government is in no position to assess.

25.   To avoid unnecessary constitutional adjudication, the Court should address these issues before reaching Defendant's First Amendment challenge.[5]

## II.   THE COURT SHOULD AVOID ADDRESSING THE CONSTITUTIONALITY OF THE TCPA'S AUTODIALER RESTRICTION IN LIGHT OF THE SEVERABILITY OF THE GOVERNMENT-DEBT EXCEPTION

The government-debt exception comports with the First Amendment, but the Court need not reach that question because the exception is severable from the remainder of the TCPA's autodialer restriction, and a decision holding that severable provision unconstitutional would provide no party relief. Avoiding a decision on the autodialer restriction's constitutionality in light of the severability of the government-debt exception is part of a "deeply rooted" doctrine that instructs courts "not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv.*, 323 U.S. at 105. At least four courts in the Eleventh Circuit have followed this approach. *See Woods*, 2017 WL 1178003, at *3 n.6 (explaining that even if the court were to find that the government debt exception rendered the TCPA unconstitutional, it would be irrelevant because the court would find the exception severable); *Sliwa*, 2018 WL 1531913, at *6 (concluding that because the government-debt exception is severable from the remainder of Section 227(b)(1)(A)(iii), and that, because the exception had no impact on the question of that defendant's liability, the defendant was not entitled to judgment on the pleadings on the basis of the alleged facial unconstitutionality of the TCPA); *Schaevitz*, ECF No. 62 at 17-21 (noting that even if the government-debt exception could be found to be problematic, it was severable); and *Wijesinha*, ECF No. 29 at 9

---

[5] The United States has intervened solely for the purpose of defending the constitutionality of the TCPA and therefore takes no position on the merits of these issues.

(concluding that even "[i]f the Court were to find the amended TCPA unconstitutional, the proper action would be to sever the offensive provisions") (citing *Woods*, 2017 WL 117003, at *3 n.6).

If the government-debt exception were held unconstitutional, the remedy would be to strike the offending exception, not to invalidate the entirety of the TCPA's autodialer restriction.  *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 931-32 (1983) ("[T]he invalid portions of a statute are to be severed 'unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.'" (citation omitted)).  "Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability."  *Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984); *see Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010).  "[T]he invalid part may be dropped if what is left is fully operative as a law," *Regan*, 468 U.S. at 653 (citation omitted), and would continue to "function in a manner consistent with the intent of Congress," *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (emphasis omitted).  Here, Congress provided an express severability provision, 47 U.S.C. § 608, and the autodialer restriction operated for more than two decades before the government-debt exception was added, leaving no doubt that Congress would have intended the restriction to continue to function in the exception's absence.  The courts that have addressed this issue have unanimously found the exception severable. *See, e.g.*, *AAPC*, 923 F.3d at 171 (finding the exception severable); *Duguid,* 926 F.3d at 1156-57 (same); *Gallion*, 772 F. App'x at 606 (following *Duguid*); *Woods*, 2017 WL 1178003, at *3 n.6 ("Here, there is no evidence that Congress would not have enacted the TCPA without the exception for government debt. To the contrary, Congress did enact the TCPA without the exception for

government debt, and the version of the TCPA without the exception has been upheld as a valid time, place, or manner restriction by several courts throughout the country.").

Other Circuits have adopted this approach to severable exceptions when considering state statutes similar to the TCPA. *See, e.g.*, *Gresham v. Swanson*, 866 F.3d 853, 854 (8th Cir. 2017) (declining to consider severable content-based exception in determining constitutionality of state-law TCPA analog), *cert. denied*, 138 S. Ct. 682 (2018); *Patriotic Veterans*, 845 F.3d at 305 ("Potential problems with how [the exemption in] subsection (a)(3) affects other persons do not give plaintiff standing to complain about [the general prohibition on autodialed calls in] subsection (b), its target in this suit."); *Van Bergen*, 59 F.3d at 1551 ("Even assuming, without deciding," that the exception is content based, if "it does not apply to [the party challenging the statute, it] is not before the court in this case.").

Defendant argues that severance would not save the TCPA from unconstitutionality because of "the myriad other content-based exemptions in the statute and as construed by the FCC, including health-related calls, certain financial transactions, package delivery notifications, and messages from wireless carriers." Def.'s Mot. at 27. None of the other exemptions identified by Defendants are actually in the statute. To the extent they are FCC-promulgated regulations, this Court has no jurisdiction to address them as discussed in more detail below. *See infra* Part III.A.3.

Accordingly, the Court should deny Defendant's First Amendment challenge without reaching the merits of the constitutional challenge.

## III.   THE TCPA'S AUTODIALER RESTRICTION DOES NOT VIOLATE THE FIRST AMENDMENT

Prior to Congress's 2015 amendment of the TCPA's autodialer restriction adding the government-debt exception, courts had long held that the pre-2015 version of the autodialer restriction—which contained both the emergency call exception and the provision empowering the FCC to establish other exceptions consistent with maintaining the public's privacy interests—was a content-neutral, time-place-and-manner restriction on speech.  *See Campbell-Ewald Co.*, 768 F.3d at 871 (holding that § 227(b)(1)(A)(iii) is a valid time-place-and-manner restriction); *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 376-77 (4th Cir. 2013) ("The district court properly determined that the TCPA is a content-neutral law to which intermediate scrutiny must be applied. . . . . [It] furthers important government interests . . . [and] the TCPA's restrictions do not burden substantially more speech than is necessary to protect those interests."); *Moser v. FCC*, 46 F.3d 970, 973-75 (9th Cir. 1995) (holding that the TCPA is content neutral and survives intermediate scrutiny); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380-82 (N.D. Ga. 2013) (upholding the autodialer restriction as a valid time, place, and manner restriction).  The Supreme Court's decision in *Reed* did not abrogate those decisions.  *See Patriotic Veterans*, 845 F.3d at 306 (collecting cases upholding the TCPA's constitutionality under intermediate scrutiny and explaining that those decisions "have not been called into question by *Reed*"); *Woods*, 2017 WL 1178003, at *4-5 (holding, after *Reed*, that the pre-amendment version of the autodialer restriction was content neutral and satisfied intermediate scrutiny).

The ordinance invalidated in *Reed* purported to impose general limits on the display of outdoor signs, but was in fact riddled with twenty-three different exemptions.  *Reed*, 135 S. Ct. at 2224.  It aimed to maintain the town's aesthetic

appeal and to promote traffic safety, *id.* at 2231, but it distinguished between signs (political, ideological, etc.) that seemed equally likely to detract from the town's beauty or add to its traffic, *see, e.g.*, *id.* at 2231-32. The Supreme Court therefore concluded that the ordinance was content based and could not survive strict scrutiny. *Reed* did not purport to overrule existing precedent or radically alter First Amendment jurisprudence. *Patriotic Veterans*, 845 F.3d at 306; *see also Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 703 F. App'x 929, 934 (11th Cir. 2017) (rejecting argument that Reed "radically . . . altered the landscape of First Amendment jurisprudence"), *cert. denied*, 138 S. Ct. 2623 (2018).

Nevertheless, Defendant argues that in light of *Reed*, the TCPA is a content-based restriction on speech that must be subjected to—and ultimately does not satisfy—strict scrutiny. Defendant argues that the statute is unconstitutional because "[it] 'draws distinctions based on the message a speaker conveys' by allowing the government to determine what speech is favored or disfavored." Def.'s Mot. at 25 (quoting *Reed*, 135 S. Ct. at 2227). Citing the government-debt exception, the exception for emergency calls, and certain FCC regulation-based exceptions, Defendant asserts that, after *Reed*, these exceptions render the TCPA impermissibly content-based. For the reasons that follow, however, Defendant's argument is meritless.

## A. None of the Exceptions Identified By Defendant Render the TCPA Unconstitutional

The lines drawn by the TCPA in no way resemble the lines drawn by the ordinance invalidated in *Reed*. Whereas in *Reed*, the Supreme Court found it problematic that the ordinance created twenty-three exceptions that seemed equally likely to detract from the town's beauty or add to its traffic, *see, e.g.*, *id.* at 2231–32; *id.* at 2239 (Kagan, J., concurring in the judgment), the TCPA

operates in an entirely different fashion. Congress enacted the TCPA "to protect the privacy interests of residential telephone subscribers." S. Rep. No. 102-178, at 1 (1991). The statute does so, in part, by prohibiting one narrow category of calls: those made using an ATDS or an artificial or pre-recorded voice and directed at a cell phone belonging to a recipient who has not previously consented to receive the calls. 47 U.S.C. § 227(b)(1)(A)(iii). The exceptions Congress carved out for calls to collect government debt, for emergencies, and for non-privacy-invading calls as determined by the FCC do not differentiate among calls depending on whether they are ideological, political, or commercial in nature as in *Reed*. *Id.* As such, the autodialer restriction does not render the TCPA content-based.

1.    *The Government-Debt Exception Does Not Render the TCPA's Autodialer Restriction Content-Based*

Defendant first contends that the exclusion of government speech from the TCPA's autodialer restriction constitutes content- and speaker-based discrimination. Def.'s Mot. at 25. Defendant cites no case law in support of its position other than a brief reference to *Reed*. Nor does Defendant grapple with the well-accepted law, undisturbed by *Reed*, that permits the government to exclude itself from regulation without running afoul of the First Amendment. It is indisputable that even in the absence of the government-debt exception, the government is not subject to the TCPA's autodialer restriction. *Campbell-Ewald Co.*, 136 S. Ct. at 672 (recognizing that the "United States and its agencies . . . are not subject to the TCPA's prohibitions"). The government-debt exception acts to protect those who are collecting debts that the government could undoubtedly collect itself without constituting an improper speaker-based exception. *See, e.g.*, *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1047 (N.D. Cal. 2017) ("[T]he government-debt exception to the TCPA

14

does not present a First Amendment problem because it merely carves out an exception for something the federal government is already entitled to do, and government speech is exempt from First Amendment scrutiny." (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009)).

And just as the government is largely unconstrained by the First Amendment when it engages in its own speech, *see Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2246 (2015); *Pleasant Grove City*, 555 U.S. at 467-68, the government has a freer hand when it enlists the services of private parties to convey the government's own message than when it differentiates among purely private speakers. This is true even if the private parties are not formally acting as the government's agents. To the extent the government-debt exception covers marginally more than private entities who should be treated as though they were part of the government, that does not render the entire autodialer restriction content-based.

In any event, the application of the government-debt exception does not turn on "the specific motivating ideology or the opinion or perspective of the speaker." *Reed*, 135 S. Ct. at 2230 (quoting *Rosenberger v. Rector and Visitors of UVA*, 515 U.S. 819, 829 (1995)). The called party either legally owes a debt to the caller—a representative of the government or a purchaser of government debt—or she does not; no opinion, ideology, or perspective is involved in determining whether the caller and the called party are related in this way.

### 2.   *Emergency Calls Exception Does Not Render the Statute Content Based*

The TCPA exempts calls made "for emergency purposes," 47 U.S.C. § 227(b)(1)(A), (B), which includes any calls "made necessary in any situation affecting the health and safety of consumers," 47 C.F.R. § 64.1200(f)(4); *see also* S. Rep. No. 102-178, at 10 ("In general, any threat to

15

the health or safety of the persons in a residence should be considered an emergency."). Examples of calls that might be made for emergency purposes include notifications of impending or current power outages, 137 Cong. Rec. H11,310, H11,313 (daily ed. Nov. 26, 1991); 137 Cong. Rec. S18784 (daily ed. Nov. 27, 1991), or of natural disasters or health-related evacuations, 137 Cong. Rec. H11,313.

That the TCPA exempts emergency calls does not render the statute content-based.   Defendant cites no case law to support this position. Emergency calls do not implicate the privacy concerns Congress sought to guard in enacting the TCPA.  Where significant government interests permit a blanket prohibition, the Supreme Court has noted, it is not content-based discrimination to exempt from that prohibition a narrow band of speech that is unrelated to the significant government interest at stake.  *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992); *see also Reed*, 135 S. Ct. at 2235 (Breyer, J., concurring in the judgment) (citing *R.A.V.* as continued exception to application of strict scrutiny).  Here, Congress enacted legislation aimed at protecting an interest in privacy.  Congress determined that because of the vast number of companies using automated systems and the advances in technology making it cost effective to do so, most unsolicited, automated calls had the effect of invading privacy and creating an unwanted nuisance for consumers.  *See* S. Rep. No. 102-178, at 2.  But such effects do not accompany emergency calls, which are likely to be met by recipients with appreciation, rather than annoyance, and to be rare and unobtrusive, instead of repetitive and invasive.  *Id.* at 5 & n.5.  The TCPA, in attempting to protect privacy by limiting the effects of unwanted automated calls, excludes emergency calls as part of Congress's intent to regulate only that speech which furthers the privacy interest.  And, in doing so, it regulates all such speech without regard

16

to content-based distinctions. Thus, the same hallmarks of invidious content discrimination that were present in *Reed* are not present here.

### 3. The FCC's Orders Do Not Render the Statute Content Based

The TCPA allows the FCC to exempt calls where doing so would "not adversely affect the privacy rights" that the TCPA seeks to protect. *See* 47 U.S.C. § 227(b)(2)(B)(ii), (b)(2)(C). Defendant argues that FCC orders exempting "medical appointment reminders," "package delivery notifications," "pending money transfers," "and certain 'autodialed or prerecorded message calls by a wireless carrier to its customer," Def.'s Mot. at 25 n.5, from the TCPA's autodialer restriction render the TCPA similar to the exemption-filled ordinance in *Reed*. Def's Mot. at 4-5. Defendant is foreclosed from making this argument as this Court is jurisdictionally barred from considering any implied or collateral challenge to FCC orders issued pursuant to this provision. *See* 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1). Defendant cannot, under the guise of a constitutional challenge to the TCPA, place the legitimacy of those FCC orders in question in a district court proceeding because "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) has *exclusive* jurisdiction to enjoin, set aside, suspend (in whole or in part), *or to determine the validity of* . . . all final orders of the Federal Communications Commission made reviewable by [47 U.S.C. § 402(a)]." 28 U.S.C. § 2342(1) (emphasis added); *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120 (11th Cir. 2014) (Section 2342's "jurisdictional analysis looks to the 'practical effect' of a proceeding, not the plaintiff's central purpose for bringing suit" (citation omitted)). Here, the practical effect of a ruling that the TCPA is unconstitutional would be the invalidation of the FCC orders promulgated

17

pursuant to one of its provisions.  For this reason, every court to review the TCPA, including after *Reed*, has declined to consider specific FCC orders in determining whether the statute is content based.  *See, e.g.*, *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1149 (D. Minn. 2017) ("Because this Court lacks jurisdiction to entertain a constitutional challenge as it pertains to FCC orders, the Court does not consider those exceptions for the purpose of this analysis [of the constitutionality of the TCPA]."); *Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 3278926, at **15 n.7 (S.D.N.Y. Aug. 1, 2017).[6]

## IV.     IF THE COURT FINDS THE TCPA CONTENT BASED, IT SHOULD CONCLUDE THAT THE STATUTE SATISFIES STRICT SCRUTINY

Even if the Court decides that the TCPA's autodialer restriction is content-based, the statute should still be upheld under strict scrutiny, which requires the government to prove that its laws are narrowly tailored to serve compelling state interests.  *Reed*, 135 S. Ct. at 2226.  Although *AAPC* and *Duguid/Gallion* erroneously concluded that the government-debt exception caused the TCPA to fall short of this standard, district courts in this Circuit and outside of the Fourth and Ninth Circuits have found otherwise.  *See Schaevitz*, ECF. No. 62 at 20; *Mejia*, 2017 WL 3278926 at **14–17; *Greenley*,

---

[6] Even assuming, *arguendo*, that such orders create content-based exemptions that do not withstanding strict scrutiny, the Court would be limited to finding the orders themselves unconstitutional.  Unconstitutional agency action cannot call into doubt an otherwise constitutional act of Congress.  To accept the contrary would be to endorse the incorrect proposition that, when an agency acts pursuant to a statute, the agency is in fact amending the statute— something the agency has no power to do.  *See, e.g.*, *Dalton v. United States*, 816 F.2d 971, 974 (4th Cir. 1987) (explaining that an agency "lacks power even by a regulation adopted after strict compliance with the Administrative Procedure Act . . . to repeal, modify, or nullify a statute" (citation omitted)).

271 F. Supp. 3d at 1149-1151; Order at 8-9, *Bonin v. CBS Radio, Inc.*, No. 2:16-cv-674, ECF No. 58 (E.D. Wis. Nov. 20, 2017).

## A. The Autodialer Restriction Serves a Compelling Government Interest

Defendant does not challenge the notion that the autodialer restriction serves a compelling government interest, and for good reason—it is well settled that the government has a compelling interest in protecting personal and residential privacy. *See, e.g.*, *Carey v. Brown*, 447 U.S. 455, 471 (1980) (government's interest "in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society"); *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) ("One important aspect of residential privacy is protection of the unwilling listener."); *United States v. Blake*, 868 F.3d 960, 969 n.4 (11th Cir. 2017) (citing cases from the Ninth, Second, and Sixth Circuits finding that individuals have a reasonable expectation of privacy in their homes), *cert. denied sub nom. Moore v. United States*, 138 S. Ct. 753 (2018).

Instead, Defendant attacks the TCPA as underinclusive and overinclusive. Defendant's arguments are meritless.

## B. The Autodialer Restriction Is Narrowly Tailored in That It Is Neither Over- Nor Under-Inclusive

Defendant contends that the autodialer restriction is not narrowly tailored because it is both over- and under-inclusive. Def.'s Mot. at 26-27. Defendant argues that the statutory provision is under-inclusive because "many message that inarguably intrude on a recipient's privacy are permitted," including "[r]obocalls and text messages about school closures, prescriptions, medical appointment reminders, and government debt." *Id*. at 26. First, Defendant cites no case law in support of its position and it defies common

sense to argue that the public finds robocalls about school closures, prescriptions, and medical appointment reminders to be as intrusive as commercial robocalls sent without an individual's consent. *See Patriotic Veterans,* 845 F.3d at 304-06 (rejecting constitutional challenge to a state anti-robocall statute that exempted school closure calls). Second, the TCPA itself contains no exceptions for school closures, prescriptions, and medical appointment reminders. Even the FCC's regulations exempt only medical appointment reminders and as discussed above, this Court has no jurisdiction to address such regulatory exemptions.

Nor does an exception for government debt create an under-inclusivity problem. As already noted, the autodialer restriction does not apply to the government. Thus, even without the government-debt exception, the government is free to use automated dialing technologies to facilitate the collection of past-due student loans and other government-backed debts. And government contractors acting at the direction of the government are likewise immune from liability for such calls. *See Campbell-Ewald*, 136 S. Ct. at 673 (citing *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20-21 (1940)). In addition, the restriction on automated dialing has never applied to calls for which the debtor has given consent. Accordingly, even without the government-debt exception, the autodialer restriction allows debt-collection calls that are made by the government or its agents, or with the consent of the party being called. To the extent the exception covers any other universe of callers, there is no reason to think such a universe is substantial or that it implicates the under-inclusivity concerns identified in *Reed*. The exceptions to the ordinance in *Reed* allowed the "unlimited proliferation" of speech that presented precisely the type of harm the statute was meant to prevent, and there was no basis for the city's uneven treatment of different types of speech. *Reed*, 135 S. Ct. at 2231.

Here, the government-debt exception presents no such problem; thus, the exception thus does not render the autodialer restriction under-inclusive.

Defendant additionally contends that the statute is over-inclusive, because less-restrictive alternatives exist. Def.'s Mot. at 27. "Less restrictive alternatives [must] be *at least as effective* in achieving the legitimate purpose that statute was enacted to serve." *Reno v. Am. Civil Lib. Union*, 521 U.S. 844, 874 (1997) (emphasis added). Defendant suggests that Congress could have adopted less-restrictive alternatives such as time-of-day limitations, mandatory disclosure of caller identity, and do-not-call lists. Def.'s Mot. at 27 (quoting *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) (identifying these alternatives)). Most courts outside of the Fourth Circuit have unanimously rejected these same three alternatives, holding that they would not be as effective as the TCPA in protecting the public's privacy. *See, e.g.*, *Brickman*, 230 F. Supp. 3d at 1048-49 ("Time-of-day limitations would not achieve the same privacy objectives because even though such a restriction may designate the span of time in which callers can intrude on an individual's privacy, it would also designate a time for intrusive phone calls. Mandatory disclosure of a caller's identity and disconnection requirements would also not be as effective in achieving residential privacy because these would not prevent the privacy intrusion from the phone call in the first place. Do-not-call lists would also not be a plausible less restrictive alternative because placing the burden on consumers to opt-out of intrusive calls, rather than requiring consumers to opt-in, would obviously not be as effective in achieving residential privacy."); *accord Holt v. Facebook, Inc.,* 240 F. Supp. 3d 1021, 1034 (N.D. Cal. 2017); *Mejia*, 2017 WL 3278926, at *17 ("Particularly in light of *Reed*'s capacious understanding of content discrimination, this Court is unwilling to let perfect tailoring be the enemy of narrow tailoring." (citing *Williams-Yulee v. Fla. Bar*,

21

135 S. Ct. 1656, 1671 (2015))); *Greenley*, 271 F. Supp. 3d at 1150-51. Defendant's citations to *Cahaly* do not alter the otherwise unanimous conclusion that those alternatives are not as effective as the TCPA.[7]

Defendant also argues that the TCPA is overinclusive because it supposedly targets "follow-up calls made by businesses to discrete lists of its own customers, many of whom may welcome the information." Def.'s Mot. at 27. Nothing in the TCPA suggests that such calls are the "target" of the statute and Defendant cites no law supporting its position. The autodialer restriction does not preclude follow-up calls made by businesses to those who *consent* to such calls. 47 U.S.C. § 227(b)(1)(A)(iii). To the extent the customer does not consent (or "welcome") the information, the business's follow-up call is exactly the sort of intrusion that the TCPA was meant to cover.

## CONCLUSION

For the foregoing reasons, the United States respectfully urges that the Court uphold the constitutionality of Section 227(b)(1)(A)(iii) of the TCPA and deny Defendant's constitutional challenge.

---

[7] In any event, even cursory review *Cahaly* reveals that it is readily distinguishable. *See Cahaly*, 796 F.3d at 402 (South Carolina anti-robocall statute singling out, among other things, calls "of a political nature" was not narrowly tailored, where state had not challenged the efficacy of less-restrictive alternatives).

Respectfully submitted this 8th day of
November, 2019,

JOSEPH H. HUNT
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

*/s Jonathan Kossak*
JONATHAN D. KOSSAK
Trial Attorney (D.C. Bar No. 991478)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20530
(202) 305-0612 (tel.)
(202) 616-8470 (fax)
jonathan.kossak@usdoj.gov


*Counsel for United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2019, a copy of the foregoing memorandum was filed electronically via the Court's ECF system which sent notification of such filing to counsel of record for all parties.

<u>/s Jonathan Kossak</u>
JONATHAN D. KOSSAK
Trial Attorney (D.C. Bar No. 991478)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20530
(202) 305-0612 (tel.)
(202) 616-8470 (fax)
jonathan.kossak@usdoj.gov

*Counsel for United States of America*

24